**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DOROTHY ANNETTE BENTLEY,**                                                **PLAINTIFF,**

**VS.**                                                **CIVIL ACTION NO. 1:07CV264-P-D**

**CITY OF SALTILLO, MISSISSIPPI,**                                          **DEFENDANT.**

**MEMORANDUM OPINION**

This matter comes before the court upon the defendant's motion for summary judgment [39]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

**I. FACTUAL BACKGROUND**

On April 11, 2007 the Mayor of the City of Saltillo, Bill Williams, sent a letter to the Board of Alderman recommending that they terminate the employment of the City Clerk, Dorothy Annette Bentley. In that letter, Mayor Williams listed five reasons for his recommendation: (1) failure to maintain proper bookkeeping/audit records of the accounts of the city including each particular fund and the accounts of each municipal officer; (2) failure to maintain city records available to the public during regular business hours; (3) failure to carry out her statutory duties in a professional manner; (4) willful violation of orders or directions made or given by a superior where such violation has amounted to insubordination; and (5) wantonly offensive conduct or language toward a fellow employee.

On April 12, 2007 the Board of Aldermen went into executive session and voted 3-2 to terminate Bentley's employment. The City avers and Bentley does not deny that she was invited to discuss her employment at the session, she was given a copy of the Mayor's letter, she answered questions posed by the Aldermen, and, after the board voted to terminate her employment, Bentley

was allowed to address the public who attended the meeting with a prepared statement.

On April 13, 2007, the *Northeast Mississippi Daily Journal* published an article entitled "Saltillo board votes to fire 23-year clerk," the day after the termination. The article published the five reasons given by the Mayor supporting his recommendation that the Board terminate the employment of Bentley.

On June 8, 2007 Bentley's attorney sent the Mayor and the Board of Aldermen a letter alleging that the City made a number of defamatory charges and that they violated Bentley's right to due process. Bentley's attorney requested a name-clearing hearing but the City did not act on this request.

Also on June 8, 2007, after being requested to do so by the State Auditor's office, Bryon Wilemon of the accounting firm of Franks, Franks & Jarrell wrote a letter to the State Auditor's office raising several issues encountered while conducting the City's 2005 audit. The 2005 audit was completed on August 9, 2007 and identified 18 findings of "reportable conditions, material weaknesses, and non-compliance." Defendant's Brief in Support of its Motion for Summary Judgment at 7.

According to the City, the day after the auditors met with the Mayor and the Board of Aldermen, the findings were reported to the *Northeast Mississippi Daily Journal* . On October 2, 2007 the *Journal* ran an article entitled "Saltillo inquiry cites 18 findings." The article cited some of the 18 findings, including that "[t]he city clerk was paid cash for attending board meetings and taking minutes. The payments weren't reflected as payroll and there was no form 1099 filed with IRS [sic] for contract work. The city's minutes didn't show where approval was given for this." It is undisputed that this statement was directly taken from the audit report.

It is also undisputed that the City's audit report is a public record and that it reflects the statements of the City's independent auditors and not the opinions of City employees. Bentley Deposition at 86.

Another newspaper, the *Lee County Courier*, published an article entitled "Auditors unable to decipher City of Saltillo financial data." This article stated in pertinent part: "The former city clerk was paid cash, above her regular salary, for attending meetings and keeping the minutes, which [Bryon] Wilemon [of the private accounting firm of Franks, Franks & Jarrell] said was illegal." The article also cites a response by Bentley as follows:

> "I have those audits here, too," said Bentley. She refused to comment on the auditor's findings, except for one of them: "I've never been paid a penny's worth of cash." Bentley said there were likely mistakes made in the city's bookkeeping, but they weren't intentional and certainly not criminal. "I know there are 'i's' not dotted and 't's' not crossed, just like any city hall in this state. But was there any wrongdoing or embezzlement? No."

On November 8, 2007 Bentley filed the instant action pursuant to 42 U.S.C. § 1983 against the City of Saltillo, alleging the City violated her 14th Amendment due process right for a name-clearing hearing.

On September 30, 2008 Bentley filed another action against the City of Saltillo, alleging that the City unlawfully retaliated against her for exercising her First Amendment rights when the Board of Aldermen voted to terminate her employment on April 12, 2007.

On December 19, 2008 the court entered an Order consolidating both cases.

The City filed the instant motion for summary judgment regarding the above-captioned cause number on November 13, 2008. Essentially, the City argues that Bentley's due process claim should fail as a matter of law because she has not demonstrated that the subject published statements were

3

false or sufficiently stigmatizing to warrant a name-clearing hearing.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present,

4

the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Due Process Claim**

To prevail on her § 1983 claim that the City denied her the right to a name-clearing hearing in violation of her 14th Amendment right to due process, the plaintiff must show: "(1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard

5

prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing." *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000).

Though the City admits that it denied her a name-clearing hearing, it argues that Bentley cannot demonstrate that the subject charges were sufficiently stigmatizing nor can she show that the charges were false.

It is undisputed that the City provided the *Northeast Mississippi Daily Journal* with the five charges the Mayor cited in his April 11, 2007 letter to the Board of Aldermen supporting his recommendation that they vote to terminate Bentley's employment. The April 13, 2007 *Journal* article essentially printed those five reasons verbatim.

Having considered the briefs of both parties, the court concludes that the plaintiff has not demonstrated a genuine issue of material fact warranting a trial on the issue of whether the subject five published reasons for termination were false. In its briefs, the City specifically cites deposition testimony of Bentley establishing the veracity of each of the charges. Though the plaintiff discusses each of the five reasons in her response brief, she does not deny any of them.

Accordingly, since the plaintiff cannot establish that the five charges published in the *Northeast Mississippi Daily Journal* on April 13, 2007 were false, her due process claim must fail pursuant to *Hughes*, 204 F.3d at 226.

With respect to the *Journal*'s October 2, 2007 article and the *Lee County Courier*'s article publishing the charge that Bentley was improperly paid in cash for attending meetings and taking minutes, the plaintiff has not shown that this information was published by the City. As stated above, it is undisputed that this allegation came directly from the audit of the City's 2005 records and Bryon

6

Wilemon of the accounting firm of Franks, Franks & Jarrell. It is also undisputed that the audit itself was public information and that Wilemon was not a City employee. The plaintiff has not otherwise established that the City of Saltillo is directly responsible for Wilemon's actions.

Furthermore, and perhaps more importantly, the plaintiff has not alleged that the City denied her a name-clearing hearing specifically regarding the latter two articles referencing the allegation that she was improperly paid in cash for attending Board meetings. Rather, the plaintiff has cited the June 8, 2007 letter sent by her attorney to the Mayor and the Board of Aldermen as evidence of her request for a name-clearing hearing. This request was sent after the plaintiff's April 12, 2007 termination and the April 13, 2007 newspaper article but before the two subsequent newspaper articles. Thus, the plaintiff has shown no evidence that she was denied a name-clearing hearing regarding the allegations published in the two subsequent articles. Accordingly, she cannot meet the sixth and the seventh elements for her cause of action pursuant to *Hughes*, 204 F.3d at 226 ( "(6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing.").

### III. CONCLUSION

For the reasons discussed above, the court concludes that the defendant's motion for summary judgment [39] should be granted. Thus, the plaintiff's claims in this action should be dismissed with prejudice. Accordingly, a final judgment shall issue forthwith,

**THIS DAY** of March 10, 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE